**BOARD OF COM'RS OF OKLAHOMA COUNTY v. RUSSELL et al.**

No. 3742.

United States Court of Appeals
Tenth Circuit.

May 6, 1949.

D. A. Richardson, Oklahoma City, Okl. (Warren H. Edwards and Fred Hoyt, Oklahoma City, Okl., were with him on the brief), for appellant.

Charles H. Garnett, Oklahoma City, Okl. (W. K. Garnett, Oklahoma City, Okl., was with him on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action for the determination of title and recovery of possession of the real estate herein involved, located in Oklahoma City, Oklahoma.

On January 3, 1903, appellees, C. O. Russell and Ruby Russell, were the owners in fee of the real estate in question. On that day they executed and delivered to Oklahoma County their warranty deed to the land for a consideration of $4,000. The deed contained this provision:

"This grant and conveyance is made however, subject to the following conditions:

"That if the said grantee shall fail and neglect to have erected on said ground herein conveyed a court house and jail to be used for court and jail purposes for said county on or before the first day of January, 1910, and shall fail to plant good healthy shade trees to *ornamnt* said ground, and make sufficient appropriation each year to procure proper care to be taken of such trees and ground, so that said trees shall live in a healthy condition, then and in that event this grant shall be null and void and said land shall revert to the grantors herein upon the grantors' paying to the said grantee herein the sum of Four Thousand Dollars together with interest thereon at the rate of seven per cent per annum from the date of this instrument."

A court house and jail were erected by January, 1910, and trees were planted and maintained by the County until 1938, when the use of the buildings was discontinued as a court house and jail. Thereafter no further appropriations or expenditures were made for the maintenance or care of the trees.

On March 26, 1946, appellees, the grantors in the deed, instituted this action against the County in the District Court of

the United States for the Western District of Oklahoma. They alleged in the complaint that the above condition in the deed had been broken in that the County had failed to erect a court house and/or jail on said land, although a court house had been erected in part on this land; that it never did use any building erected on said land or any part thereof for jail purposes; that it had ceased to use the building erected partly on said land for a court house on or about the 31st day of October, 1937; that it had failed to plant good healthy shade trees to ornament said ground and to make sufficient appropriations each year to procure proper care thereof; and that in fact the County had made no appropriation whatever for that purpose since the year 1937. It was alleged that by reason of said acts and failures on the part of the County, the grant of the land had become null and void and subject to reversion to the grantors in the deed upon the repayment payment of the consideration of $4,000, and interest as provided for in the deed. The complaint alleged proper tender of such consideration and tendered the same into court. The prayer of the complaint was for judgment for the possession of the premises, the ejectment of the County therefrom, the forfeiture of the County's title to the real estate, and the quieting of appellees' title thereto. Issues were joined and the case was tried as an equitable proceeding upon stipulations and oral testimony.

The court found that the erection of the court house before January 1, 1910, partly on the land in question and partly on adjoining land, and the erection of the jail on still other land, was a breach of the condition of the deed but that this breach of the condition of the deed was known to the appellees at the time and was waived by them.

The court also found that prior to January 1, 1910, the County planted good healthy shade trees to ornament the ground; that the court house was used for such purposes until September, 1937, at which time the use of the buildings as a court house and county jail was discontinued; and that such buildings had not been used for such purposes since; that

the County also had made sufficient appropriation each year prior to 1938 to procure proper care to be taken of the trees and that the trees lived in a healthy condition up until that time but that no appropriation had been made since the year 1937 for the care and maintenance of the trees, and that as a result many of them had died and others were in a neglected and dying condition. The court further found that prior to the institution of this action the ground in question had been used as a parking lot. The court admitted extraneous evidence to aid in the interpretation of the condition of the deed and from this evidence found that it was the intention of the parties, particularly the grantor, that the conveyance was made upon condition that the court house should after its erection be continuously used for such purposes and that the County would in each year thereafter continuously make adequate appropriations for the care of the trees, and that upon the breach of either of these conditions, the title of the land would revert to the grantors upon payment to the County of the purchase price, plus the stipulated interest. Judgment was accordingly entered for the plaintiffs, as prayed for, and this appeal followed.

Appellees have abandoned their claim to a right to have a forfeiture decreed because the jail was not erected on the tract in question and the court house was erected only in part thereon. Subsequent to this transaction they sold to the County an additional strip of land on which the jail was in part erected. Russell also testified that he knew at all times that the court house was not completely erected on the land involved in this suit and approved thereof.

We think the court erred in receiving parol evidence in construing the condition in the deed. There is no ambiguity in the language and the only question is the legal effect thereof. But in any event, the oral testimony was incompetent to support the court's conclusions as to the interpretation the parties to the deed placed on the provision in question at the time of its execution. All of the County Commissioners in office at the time

the deed was executed are dead. The oral testimony received consisted solely of Russell's testimony. The effect of his testimony was to give his understanding of what he intended by this provision in the deed. Thus he testified that,

"I assumed at that time that if they abandoned the property, I could exercise my right to the reversion clause."

And again,

"Q. Now, Mr. Russell, was it your intention and understanding when you executed the deed, that if the property ever ceased to be used for courthouse purposes, it should revert to you on payment of the $4,000.—A. That was assumed and understood.

"Q. Was that your intention when you executed the deed?—A. That was my intention, yes, that it would be maintained as a courthouse indefinitely, and the ground kept up as a park indefinitely.

"Q. And whenever that stopped, then you could retake the property?—A. Exercise my right under the deed.

"Q. Did you understand the language used in the deed to mean that?—A. I did."

What he assumed and understood is no evidence of what the understanding and agreement of the parties was or the construction they placed upon the provision even if the evidence had been properly received.

Since this evidence has no probative value, it is not necessary in any event to consider appellees' contention that the error in receiving this testimony was induced by appellants and that therefore they may not now complain of its reception.

■ It is agreed that the provision of the deed in question constitutes a condition subsequent. It follows that a breach thereof results in a forfeiture of the estate. It is also universally recognized that courts abhor forfeitures and that all provisions providing therefor will be strictly construed and that forfeitures will not be decreed except when required by the clear language thereof.[1]

The court concluded the language of the condition required the County to permanently and forever maintain the court house and jail on the premises and also maintain the trees on the grounds for the same period of time, and that a breach of either of these requirements would result in a forfeiture. In this we think the court erred. It must be noted that the provision does not require the County to permanently erect or to permanently maintain after erection a court house and jail or continuously thereafter use either of them. All it requires is that the County erect "a court house and jail to be used for court and jail purposes." The provision is entirely silent as to how long the County must maintain these buildings for such purposes.

■■ It is a matter of common knowledge that buildings erected for municipal purposes in the early life of a municipality become wholly inadequate for such purposes as the community grows, expands and develops, and that newer and larger quarters become imperative and that many times it becomes necessary to the best interests of the community that the location of such new and future buildings be changed. We may assume that the parties to this transaction were men of more than ordinary understanding of such matters and we will not assume, in the absence of clear and concise language requiring such conclusion, that they intended by this transaction to shackle Oklahoma County to this location and to the use of these buildings continuously and forever or suffer the loss of its interest in this real estate. Fairly construed, the condition of this deed required the County to erect a court house and a jail within the stipulated time and use such buildings for court house and jail purposes, and to plant and maintain trees for a like period of time, and if it failed to do this, the deed then was to become null and void upon repayment of the consideration. All the authorities compel the conclusion that this constituted full compliance with the conditions of the deed.

---

[1] Stinson v. Oklahoma R. Co., 190 Okl. 624, 126 P.2d 260; Oregon & C. R. Co. v. United States, 238 U.S. 393, 35 S. Ct. 908, 59 L.Ed. 1360; 37 C.J.S., Forfeitures, § 4(b), page 8; 23 Am.Jur., Forfeitures, Sec. 5. Page 601.

782

In Mead v. Ballard, 7 Wall. 290, 74 U.S. 290, 19 L.Ed. 190, a deed conveyed land upon the "express understanding and condition" that a certain educational institution should be "permanently located upon said lands and on failure of such location being made on or before the 7th day of September, 1848, and on repayment of the purchase money without interest, the said land shall revert to and become the property of said grantors."

The buildings for the institution were erected and were maintained for eight years when they were destroyed by fire and were not rebuilt and the institution was moved elsewhere. As here, the grantor sought a forfeiture on the ground that the condition subsequent required the permanent maintenance of the institution on the premises, but the Supreme Court construed the word "permanent" not to be permanent in the sense that it was ever thereafter to be maintained, but permanent in the sense that the buildings were erected and the institution was located with the thought in mind that it should be a permanent location. Thus the Supreme Court said:

"The thing to be done was the location of the Institute. Did this mean that all the buildings which the institution might ever need were to be built within that time, or did it mean that the officers of the institution were to determine, in good faith, the place where the buildings for its use should be erected? It is clear to us that the latter was the real meaning of the parties, and that when the trustees passed their resolution locating the building on the land, with the intention that it should be the permanent place of conducting the business of the corporation, they had permanently located the Institute within the true construction of the contract."

The court held that the abandonment of the premises subsequent thereto because the needs of the institution required it to be located otherwise did not defeat the conveyance.

In the case of Texas & Pacific Railway Company v. City of Marshall, 136 U.S. 393, 10 S.Ct. 846, 848, 34 L.Ed. 385, the City of Marshall gave the Railroad Company $300,000.00 in bonds and conveyed 66 acres of land for shops and depots in consideration of which the Railroad Company agreed "to permanently establish its eastern terminus and Texas office at the City of Marshall." The facilities were established and were maintained a number of years and were thereafter removed, whereupon, the City instituted an action to forfeit on the ground that the condition had been broken. The Supreme Court, however, held that the agreement to maintain them "permanently" did not mean that the Railroad Company was to keep such facilities there "perpetually." Thus the Court in construing the use of the word "permanent" said: "The word 'permanent' does not mean forever, or lasting forever, or existing forever." The court held that the contract on the part of the Railroad Company was fulfilled when it established these facilities and kept them going for eight years and until the interests of the Railroad Company and the public demanded removal of some or all of the facilities to some other place.

In Whalen et al. v. Baltimore & O. R. Co., 112 Md. 187, 76 A. 166, 167, the agreement on the part of the Railroad Company was to construct and maintain certain facilities. These facilities were constructed but thereafter were discontinued, whereupon, an action was brought for damages upon the covenant. The question there, as here, was whether the agreement to maintain required the Railroad Company to maintain continuously and that abandonment thereafter subjected them to liability. The Court of Appeals of Maryland held that, "We cannot yield our assent to the contention of the appellant that the word 'maintain' ordinarily means to maintain indefinitely or forever." In refusing to so construe the provision of that deed, the court pointed to the fact that there was no specific or positive provision in the covenant touching the duration of time. Relief was denied.

In Romero et al. v. Department of Public Works, et al., Cal.App., 97 P.2d 871, 872, the language of the deed was that:

"This deed is made upon the express condition that the land hereby conveyed

shall be used by the party of the second part, its successors or assigns, for railroad purposes, and in the event that said party of the second part, its successors or assigns, shall fail so to use said land for railroad purposes then and thereupon said land shall revert to and become vested in the heirs of said * * *."

The railroad was located upon the property and operated for 40 years and was thereafter discontinued. The question as propounded by the California court was whether ceasing to continuously use the property for railroad purposes worked a breach of the reversionary condition in the deed? The court reviewed a number of authorities and answered the question in the negative. It held that where property is conveyed upon condition that it be used for certain purposes and that in the event it is not so used, title is to revert to the grantor, there is no breach in the condition if the property is so used for a reasonable period and thereafter is not used for the designated purpose. To the same effect, see Dukes v. Cole, 129 Ind. 137, 28 N.E. 441.

Here the County, in good faith, erected the required improvements within the period of time provided for with the intent that the location was permanent as distinguished from a temporary location, and continued to use these buildings and premises for the designated purposes for more than 27 years when the needs of the County apparently required more commodious buildings and quarters located at another place.

In line with all the authorities, we hold that the erection of the court house and the jail upon these premises and the continued use for such purposes for more than 27 years, and the planting and care of trees for a like period, constituted full compliance with the condition of this provision in the deed, and that the title of the County in the property was not subject to forfeiture when thereafter they discontinued the further use of these premises for such purposes.

If, as all these cases hold, a condition requiring permanent location or permanent use or dedication of property to a use did not require perpetual maintenance and dedication to such uses, certainly we should not hold that a deed which merely requires the County to erect buildings and use and maintain them for the purposes for which they were erected is to be construed as requiring the County to perpetually and forever use such property for such purposes.

The judgment of the trial court is accordingly reversed and the cause is remanded with direction to enter judgment in conformity with the views expressed herein.

